## **Exhibit G**

RJ Acceptance Order

(Portuguese only; English translation forthcoming)



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 1ª Vara Empresarial
Erasmo Braga, 115 Lam. Central sala703CEP: 20020-903 - Centro - Rio de Janeiro - RJ Tel.: 3133 3735/3603    e-mail: cap01vemp@tjrj.jus.br

**Fls.**

Processo: 0288463-96.2018.8.19.0001

# Processo Eletrônico

Classe/Assunto: Recuperação Judicial - Recuperação Judicial

Autor: SERVIÇOS DE PETRÓLEO CONSTELLATION S.A.
Autor: CONSTELLATION OVERSEAS LTD
Autor: CONSTELLATION SERVICES LTD
Autor: GOLD STAR EQUITIES LTD
Autor: LANCASTER PROJECTS CORP.
Autor: LAGUNA STAR LTD
Autor: LONE STAR OFFSHORE LTD
Autor: OLINDA STAR LTD
Autor: SNOVER INTERNATIONAL INC.
Autor: STAR INTERNATIONAL DRILLING LTD
Autor: SERVICOS DE PETRÓLEO CONSTELLATION PARTICIPAÇÕES S.A.
Autor: MANISA SERVIÇOS DE PETRÓLEO LTDA.
Autor: TARSUS SERVIÇOS DE PETRÓLEO LTDA.
Autor: ALPHA STAR EQUITIES LTD
Autor: AMARALINA STAR LTD
Autor: ARAZI S.À.R.L.
Autor: BRAVA STAR LTD
Autor: CONSTELLATION OIL SERVICES HOLDING S.A.

---

Nesta data, faço os autos conclusos ao MM. Dr. Juiz
Alexandre de Carvalho Mesquita

Em 06/12/2018

## Decisão

Trata-se de pedido de recuperação judicial com base nos artigos 47 e seguintes da Lei 11.101/05, formulado por SERVIÇOS DE PETRÓLEO CONSTELLATION S/A, SERVICOS DE PETRÓLEO CONSTELLATION PARTICIPAÇÕES S/A,  ALPHA STAR EQUITIES LTD, AMARALINA STAR LTD, ARAZI S.À.R.L., BRAVA STAR LTD, CONSTELLATION OIL SERVICES HOLDING S/A, CONSTELLATION OVERSEAS LTD, CONSTELLATION SERVICES LTD, GOLD STAR EQUITIES LTD, MANISA SERVIÇOS DE PETRÓLEO LTDA., TARSUS SERVIÇOS DE PETRÓLEO LTDA., LANCASTER PROJECTS  CORP., LAGUNA STAR LTD, LONE STAR OFFSHORE    LTD,    OLINDA STAR LTD, SNOVER INTERNATIONAL INC. e STAR INTERNATIONAL  DRILLING LTD, alegando as requerentes, em resumo, que em 1980, foi fundada no Rio de Janeiro a Queiroz Galvão Perfurações S/A - o embrião do Grupo Constellation e, atualmente, denominada Serviços de Petróleo Constellation S/A. -,tendo como missão expandir o serviço de perfuração para exploração de petróleo e gás no Brasil. Afirma que, inicialmente, prestando serviços à Petrobras, a atuação do Grupo Constellation se deu através de locação de sondas de perfuração terrestres, as chamadas sondas onshore, com atuação, principalmente, no Norte e Nordeste do país. Aduz que paralelamente ao desenvolvimento da atividade de perfuração onshore, em 1994, acompanhando o novo momento econômico do Brasil, o Grupo Constellation passou a se dedicar à atividade de perfuração



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 1ª Vara Empresarial
Erasmo Braga, 115 Lam. Central sala703CEP: 20020-903 - Centro - Rio de Janeiro - RJ Tel.: 3133 3735/3603    e-mail:
cap01vemp@tjrj.jus.br

offshore, consolidando, em 2006, sua atuação em águas ultra profundas.  Assevera que atualmente o Grupo Constellation possui 9 sondas de perfuração onshore, sendo 4 convencionais e 5 helitransportáveis; bem como 8 sondas de perfuração offshore, sendo 2 semissubmersíveis ancoradas para operação em lâmina d'água de até 1.100 metros, 3 de posicionamento dinâmico para operação em lâmina d'água de até 2.700 metros e 3 navios-sonda para operação em lâmina d'água até 3.000 metros. Argumenta que o Grupo Constellation é líder em desempenho em operações no pré-sal devido: (a) ao seu alto nível de produtividade; (b) à tecnologia de monitoramento on-line da base, que otimizou a solução de problemas e vigilância; (c) à larga experiência com as questões operacionais, responsável por aprimorar diversos procedimentos como, por exemplo, da coluna de perfuração para evitar a fadiga das tubulações e o tubo preso em sal; e (d) ao aparelhamento das unidades de perfuração com equipamentos necessários para operação efetiva na área do pré-sal. Diz que as referidas sondas foram adquiridas pelo Grupo Constellation conforme a demanda do setor de óleo e gás no Brasil, a fim de atender, prioritariamente, os prospectos empreendidos pela Petrobras no país. Sustenta que atualmente as requerentes detêm 17 sondas, sendo 9 onshore e 8 offshore e que a atividade operacional predominante do Grupo é por meio de suas sondas offshore, sendo certo que, das 8 sondas, 7 operam no Brasil. Alega que a notabilidade das requerentes pela prestação de serviços de excelência no setor de exploração de óleo e gás brasileiro é indiscutível e reconhecido não só pelos seus clientes como por players institucionais, sendo que no ano de 2017, por exemplo, o grupo foi o mais premiado do IADC Brazil Chapter Safety Awards, por seu desempenho com a segurança ambiental e laboral da sua operação. Afirma que mais recentemente, precisamente no último dia 23 de novembro, o Grupo foi premiado pela Agência Nacional do Petróleo, Gás Natural e Biocombustíveis - ANP, no Prêmio ANP de Inovação Tecnológica 2018, sagrando-se vencedor na categoria II "Resultado de projeto (s) desenvolvido (s) por Empresa Brasileira, com ou sem participação de Instituição Credenciada, em colaboração com Empresa Petrolífera, na área temática geral 'Exploração e Produção de Petróleo e Gás'". Aduz que a atividade de perfuração desenvolvida pelo Grupo Constellation, onshore e, principalmente, offshore, por ser complexa e altamente custosa, exige uma vultosa estrutura de alavancagem financeira para sua viabilização e que no caso do Grupo Constellation, essa estrutura de endividamento consiste, essencialmente, na emissão de títulos de dívida (Corporate Bond), financiamentos levantados pela Amarelina Star, Laguna Star e Brava Star (Project Finances) e mútuos bancários. Assevera que este é fundamentalmente o perfil das dívidas concursais do Grupo Constellation:  recursos captados para a aquisição, construção e manutenção das sondas que opera e que adicionalmente, há também dívidas integrantes da classe I e quirografárias contraídas com fornecedores em geral, além de outras despesas operacionais das companhias. Argumenta que a despeito das múltiplas entidades indicadas no preâmbulo, a existência de garantias cruzadas, bem como a possibilidade de vencimento antecipado de instrumentos de dívida em razão de inadimplemento cruzado, não permite uma reestruturação de forma individualizada e que é preciso uma solução conjunta, que permita a continuidade das quase 4 (quatro) décadas de história do Grupo Constellation. Diz que a propósito da inter-relação das dívidas, as requerentes já chegaram a um consenso quanto à reestruturação de parte significativa delas com os seus credores bancários (os "Credores Apoiadores") - mais especificamente, o grupo de credores integrante do chamado Project Finance (10 instituições financeiras) e o Banco Bradesco S/A, Grand Cayman Branch (fornecedor de capital de giro). Sustenta que os Credores Apoiadores representam o expressivo percentual de 48.3% da classe II e 60.2% da classe III, considerando o quadro de credores apresentado com essa inicial. Alega que esse apoio foi formalizado no último dia 29 de novembro por meio da assinatura, pelos Credores Apoiadores, requerentes e acionistas de um Plan Support Agreement (aqui referido como "PSA"), o qual contém as condições de reperfilamento da dívida mantida com os Credores Apoiadores a serem refletidas no Plano de Recuperação Judicial a ser oportunamente apresentado na forma da LRF. Afirma que além das condições comerciais, os Credores Apoiadores anuíram com a implementação do PSA por meio de um processo de recuperação judicial, consentindo expressamente desde logo com a competência da justiça brasileira para



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 1ª Vara Empresarial
Erasmo Braga, 115 Lam. Central sala703CEP: 20020-903 - Centro - Rio de Janeiro - RJ Tel.: 3133 3735/3603    e-mail: cap01vemp@tjrj.jus.br

processamento deste pedido em relação a todas as requerentes, com o deferimento da consolidação substancial. Aduz que é justamente nesse contexto que se insere o presente pedido de Recuperação Judicial em que, resumidamente, o valor total do endividamento concursal consiste, nesta data, no montante de R$ 5.753.783.237,78 e que a divisão do passivo nas Classes estabelecidas no art. 41 da LRF pode ser observada na listagem de credores contida no documento 7 que instrui a presente. Assevera que não obstante o conhecido e dantesco cenário político e econômico brasileiro tenha um peso significativo na crise enfrentada pelo Grupo Constellation, o presente pedido de recuperação judicial tem raízes muito mais profundas. Argumenta que o setor de óleo e gás é marcado por flutuações cíclicas do preço do petróleo, com quedas e ascensões expressivas e abruptas. Diz que, ultrapassada a crise econômica mundial de 2008, que desacelerou o crescimento econômico mundial, reduzindo o consumo de petróleo, o preço do barril do petróleo voltou a crescer, chegando a custar mais de US$ 124,00 em março de 2012. Sustenta que o êxtase do setor estimulou o amplo acesso a crédito às empresas ligadas à exploração do petróleo - como aquelas do Grupo Constellation -, bem como, e por consequência, fomentou todo o desenvolvimento do setor, que efetivamente se preparou para um aumento de produção. Alega que foi justamente nesse contexto de crescimento que foram contraídas as principais dívidas do Grupo Constellation, com a aquisição de diversas unidades de perfuração - os contratos (e os respectivos financiamentos) das unidades Amaralina e Laguna, por exemplo, tiveram início em 2012, e o da Brava, em 2014. Afirma que, desde o segundo semestre de 2014, os preços do barril de petróleo vêm apresentando queda dramaticamente acentuada, sem que a indústria tenha apresentado a recuperação rápida e nos patamares verificados em outros momentos históricos. Aduz que os fatores exógenos que causam a queda dos preços do barril do petróleo são conhecidos: (i) a redução do consumo de petróleo da China - dada a sua desaceleração econômica - e de outros países historicamente demandantes, como a Alemanha; (ii) a quase autossuficiência dos Estados Unidos - através da exploração alternativa do chamado "shale oil" -; (iii) a maior demanda e desenvolvimento de outras matrizes energéticas; e (iv) a postura dos países que integram a Organização dos Países Exportadores de Petróleo (OPEP) em manter a produção de petróleo elevada, mesmo diante da redução do consumo, a fim de, em última análise, com preços baixos, tornar inviável a produção alternativa de óleo e gás, notadamente mais cara - como aquela desenvolvida nos Estados Unidos, ou mesmo a que vem se desenvolvendo no pré-sal brasileiro. Assevera que diante de muita oferta e redução da procura, o mercado sabidamente estacionou e que a baixa remuneração do barril de petróleo e a insegurança em relação às projeções tornou o crédito mais restrito, impactando diretamente a higidez dos vultosos projetos relacionados à exploração de petróleo. Argumenta que no caso do Grupo Constellation, os contratos de prestação de serviço e de afretamento, cuja equação econômico-financeira originariamente garantia o pagamento das dívidas contraídas para a fabricação das unidades de perfuração, atualmente, possuem uma taxa de remuneração diária substancialmente inferior à que vinha sendo praticada. Diz que o declínio brusco a partir de 2014, acentuado nos últimos dois anos, deixa clara a oscilação do mercado, que afeta diretamente a taxa de remuneração dos contratos, cujo prazo de vigência é de 6 anos, em média e que não é difícil concluir, portanto, pelo desequilíbrio da equação econômico-financeir
a dos referidos contratos e, consequentemente, pelo prejuízo suportado pelo Grupo Constellation. Sustenta que a este cenário global soma-se a conjuntura econômica do nosso país. Alega que o Grupo Constellation tem sua atividade operacional desenvolvida principalmente no Brasil, fornecia serviços prioritariamente para uma empresa brasileira, sabidamente para a Petrobras, ou seja, os efeitos da crise no país ressoaram imperdoavelmente sobre as requerentes. Afirma que não por outro motivo, a crise sem precedentes gerou dificuldades não só para a estatal, mas, naturalmente, para toda a sua cadeia de fornecedores. Aduz que no ápice do aquecimento da indústria no Brasil, incentivado pela política econômica do nosso governo, bem como pelo apetite da Petrobras, o Grupo Constellation investiu pesadamente na obtenção de unidades de perfuração offshore. Assevera que, como resultado, o Grupo Constellation sempre teve posição de destaque no ranking de principais operadores de sondas de perfuração da Petrobras, tendo ostentado, por longos períodos a primeira colocação. Argumenta que, em decorrência da crise, esses 2 vetores

ACMESQUITA



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 1ª Vara Empresarial
Erasmo Braga, 115 Lam. Central sala703CEP: 20020-903 - Centro - Rio de Janeiro - RJ Tel.: 3133 3735/3603    e-mail:
cap01vemp@tjrj.jus.br

foram alterados radicalmente, isto é, a Petrobras, por razões evidentes, interrompeu projetos, estacionou investimentos e vem contratando de forma menos acelerada que no passado e o governo, por sua vez, começa a estabelecer uma nova política para o setor de óleo gás. Diz que o Programa de Desinvestimento iniciado pela Petrobras que, entre outras medidas, deixou de participar de novos leilões para exploração do pré-sal, é um claro exemplo de retração do mercado, sendo que a meta divulgada pela empresa para este biênio de 2017-2018 era de garantir o levantamento do valor expressivo de 21 bilhões de dólares com as medidas implementadas por meio do referido programa. Sustenta que, não fosse o bastante, cita-se as exigências regulatórias cada vez mais rigorosas, que aumentaram a necessidade de capital para operação, manutenção e mão-de-obra das unidades de perfuração, bem como o aumento na carga tributária sobre a importação de alguns dos principais equipamentos relacionados à exploração e produção de petróleo, o que também aumenta o custo operacional do Grupo Constellation no Brasil. Alega que, apesar das requerentes serem altamente reconhecidas no mercado pela sua solidez e pela sua capacidade administrativa-operacional e eficiência - o que se revela evidente pelo próprio apoio antecipado de parte significativa dos seus credores com a assinatura do PSA, conforme exposto anteriormente -, a crise econômica e petrolífera que se instaurou internacionalmente e, principalmente, no território brasileiro, terminou afetando de forma brutal o seu fluxo de caixa. Afirma que, por essa razão, há mais de um ano o Grupo Constellation conduz a reestruturação da sua dívida com seus credores financeiros fora do ambiente judicial e que embora a negociação tenha sido especialmente exitosa, o acordo não foi possível com uma parte dos credores, tornando inevitável esse pedido a fim de se obter a proteção judicial na forma da LRF. Aduz que o Grupo Constellation tem a confiança de que a crise de liquidez enfrentada é passageira e não deve afetar de forma definitiva a solidez das atividades por ele desenvolvidas. Assevera que, em que pese não se espere, no curto prazo, a recuperação do preço do barril do petróleo, as requerentes confiam que o descasamento no seu fluxo de caixa que conduziu à presente Recuperação Judicial é transitório, isso porque as são sociedades altamente capacitadas e especializadas e estão aptas a participar do novo cenário do setor de óleo e gás no país, que irá, necessariamente, proporcionar a exploração do petróleo do pré-sal, bem como que já estão sendo muito bem-sucedidas em relação a novos negócios. Argumenta que ainda em 2017, o Grupo Constellation firmou contrato offshore internacional com a Oil and Natural Gas Corporation ("ONGC"), empresa estatal de exploração de petróleo indiana, para afretamento da sonda Olinda Star, com duração de 3 (três) anos e que a operação está sendo desenvolvida em um dos blocos de gás natural em águas profundas na bacia Krishna Godavaria, localizada na costa leste indiana. Diz que mesmo no Brasil, o Grupo Constellation tem obtido vitórias importantes em licitações, refletidas em contratos de curto e curtíssimo prazo, respectivamente, com a Shell Brasil Petróleo Ltda. e com a Queiroz Galvão Exploração e Produção S/A. Sustenta que tal fato apenas ressalta que, não obstante a situação de crise singular vivida pelo país, o mercado nacional possui uma enorme demanda potencial que pode ser atendida pelo Grupo Constellation, dada sua notoriedade no mercado brasileiro. Alega que, em uma perspectiva global, o cenário futuro é positivo para o setor de óleo e gás, diante da grande demanda de energia mundial e, principalmente, da previsão de aumento do preço dos produtos básicos energéticos - para esse ano, a estimativa era de um aumento próximo a 4%. Afirma que, além disso, superando as projeções da indústria, no último ano, se verificou uma reação positiva de mercado e o preço do barril de petróleo chegou muito próximo de US$ 80,00, o que estava previsto para ocorrer apenas em meados de 2019. Aduz que está claro o grande interesse no estímulo às atividades das requerentes e que a presente Recuperação Judicial possibilitará a manutenção de mais de 1.200 postos de trabalho diretos no país - e tantos outros indiretos -, a implementação de medidas e eficiência operacional e reestruturação societária, permitindo a atuação competitiva no setor de óleo e gás do país - e internacionalmente. Assevera que, antes mesmo do ajuizamento do presente pedido, o Grupo Constellation adotou no último ano (i) ajustes nos orçamentos anuais de suas diversas áreas, tendo em vista a realidade atual; (ii) congelamento de reajustes salariais espontâneos; (iii) redimensionamento das estruturas organizacionais ("rightsizing"); e (iv) adequação do quadro de pessoal. Argumenta que, nada obstante, em que



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 1ª Vara Empresarial
Erasmo Braga, 115 Lam. Central sala703CEP: 20020-903 - Centro - Rio de Janeiro - RJ Tel.: 3133 3735/3603    e-mail:
cap01vemp@tjrj.jus.br

pese toda a série de medidas que o Grupo Constellation vem adotando para se
adaptar ao novo momento, nenhuma delas, isoladamente ou em conjunto, surtirá os efeitos
desejados caso não seja concedida a proteção conferida pela LRF, com a suspensão da
exigibilidade das suas dívidas, garantindo o fôlego necessário para que as Requerentes possam
se reorganizar e propor um plano de pagamento da dívida existente aos seus credores, adequado
à nova realidade, conforme refletido no PSA. Diz que a retração do mercado gerou a necessidade
de readequação dos financiamentos, já que as taxas de remuneração das sondas, atualmente,
são muito inferiores àquelas praticadas à época da formalização dos contratos e que assim,
mesmo num cenário hipotético em que o Grupo Constellation mantivesse em
operação todas as suas sondas, ainda assim seria necessário reestruturar seu
endividamento para solucionar o descasamento do fluxo de caixa, sem a perda de seus principais
ativos, quais sejam: as unidades de perfuração, que, em última análise, possibilitam sua atividade
fim. Sustenta que desde o início de 2017, o Governo Federal e a ANP realizaram diversas
alterações regulatórias relacionadas ao setor de Petróleo e Gás Natural, a fim de tornar mais
atraentes as rodadas de licitação e, consequentemente, estimular novos investimentos na área do
pré-sal. Alega que a principal alteração foi a mudança do regime de concessão para partilha de
produção, através do qual o Estado e as empresas exploradoras dividem entre si a produção do
óleo e gás e que contudo, espera-se, ainda, uma maior abertura dos campos de exploração do
pré-sal a outras operadoras, o relaxamento das regras de Desinvestimento da
Petrobras, bem como o desenvolvimento comercial da região localizada na margem
equatorial, apoiado no desenvolvimento alcançado pela ExxonMobil Corporation na Guiana.
Afirma que a expectativa do governo com essas alterações é que a exploração renda valor
superior a R$ 100 bilhões em investimento. Aduz que é notório que a produção de óleo no mundo
em países não pertencentes à OPEC vem declinando a taxas constantes nos últimos anos.
Assevera que, neste sentido, o pré-sal brasileiro e as áreas petrolíferas do Canadá são tratados
como meios de compensação das taxas de declínio global. Argumenta que o cenário para o setor
é positivo e a demanda por sondas offshore para exploração em águas ultra profundas tende a
aumentar para os próximos anos e que neste sentido, a relevância do Grupo Constellation
desponta no setor, já que 6 de suas 8 sondas são aptas para perfuração em águas ultra
profundas. Diz que, neste ponto, frisa-se a relevância histórica do Grupo Constellation, que atua
há 35 anos no mercado brasileiro e permanece bem posicionado na assunção de novos
negócios, por cinco razões principais: (a) os custos de mobilização em relação às operadoras
internacionais são bem menores, já que por circunstâncias comerciais as sondas já estão
localizadas no Brasil; (b) registro operacional e de segurança exemplar do Grupo; (c) a
excelência organizacional e expertise no mercado de extração brasileiro; (d) equipe
de gestão experiente e altamente qualificada; e (e) frota excepcional, eleita
consecutivamente, de março de 2016 a março de 2018, o equipamento líder em frotas da
Petrobras. Sustenta que todos esses fatores induzem à conclusão de que esta é uma recuperação
plenamente possível, que atende aos fins da LRF e que, por isso, deve ser deferida por este
Juízo. Requereu, ao final, o deferimento do processamento da recuperação judicial. A inicial veio
instruída com os documentos de fls. 35/2077.

É O RELATÓRIO. DECIDO.

Inicialmente, cumpre apreciar a questão relativa ao litisconsórcio ativo. Como as requerentes
ressaltaram na sua petição inicial, em que pese tenham personalidades jurídicas diversas,
patrimônios autônomos, estruturas próprias adequadas para exercício de suas atividades e sejam
em sua maioria sociedades estrangeiras, todas elas reúnem esforços no sentido de possibilitar o
desenvolvimento da operação de sondas onshore e offshore no Brasil, compondo um grupo
econômico.

Como lá dito também, há muito já se consolidou o entendimento jurisprudencial de que o
litisconsórcio no processo recuperacional é plenamente admissível, quando verificada, justamente,



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 1ª Vara Empresarial
Erasmo Braga, 115 Lam. Central sala703CEP: 20020-903 - Centro - Rio de Janeiro - RJ Tel.: 3133 3735/3603    e-mail: cap01vemp@tjrj.jus.br

a configuração de grupo econômico, aplicando-se ao caso o art. 113, I do NCPC em razão de haver entre as requerentes comunhão de direitos e de obrigações relativamente a esta recuperação judicial. Além do mais, além de não ser a Lei nº 11.101/05 expressa quanto aos processos recuperacionais transnacionais, é certo que não há impeditivo à formação de litisconsórcio com empresas estrangeiras.  Ressalte-se que os Credores Apoiadores, principais interessados na recuperação das requerentes, igualmente reconheceram que este pedido deve ser processado em consolidação substancial. Assim, defiro o litisconsórcio ativo como pretendido.

Com relação à questão da competência, não há dúvidas no sentido de que o centro das operações atuais das recuperandas se situa na cidade do Rio de Janeiro, levando-se em conta também um fato relevantíssimo: apesar de muitas delas serem sociedades internacionais, a sua atividade direciona-se para a mesma atividade empresarial, com foco em prestação de serviços no Brasil e historicamente predominantemente para um cliente brasileiro, a saber, a Petrobras.

A empresa requerente atendeu aos requisitos do artigo 48 da Lei 11.101/05, ao comprovar que está em atividade há mais de 02 (dois) anos conforme se constata dos atos constitutivos e do comprovante de CNPJ.

A inicial expõe as causas da crise econômico-financeira, conforme impõe o inciso I do art. 51 da Lei 11.101/05, vindo acompanhada da documentação exigida pelo inciso II do mesmo artigo.

A requerente apresentou certidões negativas de protestos, de interdições e tutelas, e demonstra a inexistência de procedimentos falimentares ou de anterior recuperação judicial e inexistência de procedimentos criminais em face dos administradores.

Por tais fundamentos, defiro o processamento da recuperação judicial das referidas empresas e determino, nos termos do artigo 52 da Lei 11.101/05:

I - Que a requerente acrescente após seu nome empresarial a expressão "em recuperação judicial";
II - A suspensão de todas as ações e execuções contra a requerente, na forma do art. 6º da Lei 11.101/05 e mais as exceções previstas no art. 49, parágrafos 3º e 4º da mesma Lei;
III - Que a requerente apresente contas demonstrativas mensais durante todo o processamento da recuperação judicial, sob pena de destituição de seus administradores;
IV - A expedição e publicação do edital previsto no parágrafo 1º do art. 52 da Lei 11.101/05;
V - A intimação do Ministério Público e comunicação às Fazendas Públicas Federal, Estadual e do Município do Rio de Janeiro.

Considerando os argumentos expostos na petição inicial, determino que a relação de empregados e as declarações de bens apresentadas em cumprimento ao art.  51, incisos IV e VI, da LRF, fiquem acauteladas no gabinete deste julgador, sob segredo de justiça, ficando o acesso a elas restrito apenas ao juiz, ao Administrador Judicial e ao representante do Ministério Público, cabendo a esses a vista mediante requerimento fundamentado.

Nomeio Administrador Judicial Marcello Ignácio Pinheiro de Macêdo, com escritório na rua do Carmo, 57, 4º andar, Rio de Janeiro, RJ, (tel.: 2252-7095), que desempenhará suas funções na forma do inciso III do caput do artigo 22 da Lei 11.101/05, sem prejuízo do disposto no inciso I do caput do artigo 35 do mesmo diploma legal.

Para a fixação da remuneração do Administrador Judicial, traga o mesmo planilha indicando precisamente os valores que pretende cobrar a título de honorários.

Intime-se o Administrador para, aceitando o encargo, assinar o termo de compromisso em cartório.



Estado do Rio de Janeiro Poder Judiciário
Tribunal de Justiça
Comarca da Capital
Cartório da 1ª Vara Empresarial
Erasmo Braga, 115 Lam. Central sala703CEP: 20020-903 - Centro - Rio de Janeiro - RJ Tel.: 3133 3735/3603    e-mail:
cap01vemp@tjrj.jus.br


Dê-se ciência ao MP (art. 3º, X da Deliberação OECPJ nº 30 de 29 de agosto de 2011).

Rio de Janeiro, 06/12/2018.

**Alexandre de Carvalho Mesquita - Juiz Titular**

_____

Autos recebidos do MM. Dr. Juiz

Alexandre de Carvalho Mesquita

Em ____/____/_____


Código de Autenticação: **4KZQ.8BFB.8TZS.WK62**
Este código pode ser verificado em: www.tjrj.jus.br – Serviços – Validação de documentos



ALEXANDRE DE CARVALHO MESQUITA:17530    Assinado em 06/12/2018 19:15:37
Local: TJ-RJ