UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | **FOR PUBLICATION** |
| | : | |
| | : | Chapter 15 |
| Serviços de Petróleo Constellation S.A., *et al.*,[1] | : | Case No. 18-13952 (MG) |
| | : | |
| Debtors in a Foreign Proceeding. | : | (Jointly Administered) |

------------------------------------------------------------------x

**MEMORANDUM OPINION (I) APPROVING THE WITHDRAWAL BY THE
FOREIGN REPRESENTATIVE OF THE VERIFIED PETITION FOR RECOGNITION
OF THE BRAZILIAN RJ PROCEEDING AS TO OLINDA STAR LTD. (IN
PROVISIONAL LIQUIDATION) AND DISMISSAL OF ITS CHAPTER 15 CASE; AND
(II) GRANTING THE FOREIGN REPRESENTATIVE'S RENEWED REQUEST FOR
RECOGNITION OF THE BRAZILIAN RJ PROCEEDING OF ARAZI S.À.R.L.
PURSUANT TO 11 U.S.C. §§ 1515, 1517 AND 1520, AND GIVING FULL FORCE AND
EFFECT TO THE BRAZILIAN RJ PLAN WITH RESPECT TO ARAZI S.À.R.L.**

*A P P E A R A N C E S:*

WHITE & CASE LLP
*Attorneys for Andrew Childe,*
*as Petitioner and Foreign Representative*
1221 Avenue of the Americas
New York, NY 10020 By:     John K. Cunningham, Esq.
        Thomas E. MacWright, Esq.
        Samuel P. Hershey, Esq.


111 South Wacker Drive
Chicago, IL 60606
By:     Jason N. Zakia, Esq. (*admitted pro hac vice*)

---

[1]     The Chapter 15 Debtors in these Chapter 15 cases (the "Chapter 15 Cases") are as follows: Serviços de Petróleo Constellation S.A.; Lone Star Offshore Ltd. (In Provisional Liquidation); Gold Star Equities Ltd. (In Provisional Liquidation); Olinda Star Ltd. (In Provisional Liquidation); Star International Drilling Limited; Alpha Star Equities Ltd. (In Provisional Liquidation); Snover International Inc. (In Provisional Liquidation); Arazi S.à.r.l.; Constellation Oil Services Holding S.A.; Constellation Overseas Ltd. (In Provisional Liquidation) (together, the "Chapter 15 Debtors").

**MARTIN GLENN**
**United States Bankruptcy Judge**

Following earlier decisions of the Brazilian courts and of this Court, most of the

Constellation Group of companies successfully reorganized under the RJ Plan approved by the

Brazilian courts and recognized and enforced in this Court.  The Brazilian RJ Court (the first

instance court in which the Constellation reorganization proceeding was pending) had ordered

that two members of the Constellation Group—Olinda Star Ltd. ("Olinda") and Arazi S.à.r.l.

("Arazi")—be dropped from the Brazilian RJ Proceeding.  Olinda and Arazi had been included

as Chapter 15 Debtors in this Court, but this Court concluded that since they were dropped as

debtors in the RJ Proceeding, they couldn't be recognized as foreign debtors in the then pending

chapter 15 case.

The Brazilian appellate court thereafter reversed in part the decision of the Brazilian RJ

Court, concluding that Arazi was properly a party to the Brazilian RJ Proceeding, but that Olinda

was not a proper party.  In light of that appellate ruling, the Foreign Representative has now filed

a motion in this Court to recognize the Brazilian RJ Proceeding of Arazi, and to give full force

and effect of the RJ Plan to Arazi.  For the reasons explained below, this Opinion concludes that

Arazi's Brazilian RJ Proceeding should be recognized in this chapter 15 case as a foreign

nonmain proceeding, and the Brazilian RJ Plan should be recognized and enforced with respect

to Arazi.

While a further appeal is pending in Brazil as to Olinda, the Foreign Representative

concluded that the better course was to commence a "soft touch" winding up proceeding as to

Olinda in the BVI, where Olinda is incorporated.  Olinda's creditors then unanimously voted to

approve a scheme of arrangement for Olinda in the BVI proceeding, on the same terms as the

Brazilian RJ Plan.[2]  The Foreign Representative therefore now asks that Olinda's chapter 15

petition in Case No. 18-13952 (MG) be dismissed.  That relief is also granted in this Opinion.

## I.    <u>BACKGROUND</u>[3]

Pending before the Court is the motion of Andrew Childe, in his capacity as foreign

representative (the "Foreign Representative" or "Petitioner") of the jointly-administered judicial

reorganization proceeding (the "Brazilian RJ Proceeding") of Serviços de Petróleo Constellation

S.A. and certain of its affiliated debtors (the "Constellation Group") pending in the 1st Business

Court of Rio de Janerio (the "Brazilian RJ Court") seeking: (I) the withdrawal of the Verified

Petition for Recognition of the Brazilian RJ Proceeding ("Verified Petition," ECF Doc. # 7) with

respect to Olinda and the dismissal of Olinda's chapter 15 case (18-13959-mg) (the "Existing

Olinda Chapter 15 Case"); and (II) recognition of the Brazilian RJ Proceeding of Arazi as either

a foreign main or nonmain proceeding, and recognition of Petitioner as the foreign representative

of the of Arazi's Brazilian RJ Proceeding and entry of an order granting full force and effect and

comity in the United States to the Brazilian reorganization plan (the "RJ Plan") and the order of

the Brazilian RJ Court confirming the RJ Plan (the "Brazilian Confirmation Order") with respect

to Arazi.  ("Motion," ECF Doc. # 197.)

In support of the Motion, Petitioner submits the declaration of Samuel P. Hershey.

("Hershey Decl.," ECF Doc. # 198.)  Petitioner also relies on and incorporates by reference the

Verified Petition and several declarations previously submitted to the Court.  ("Third Hershey

Decl.," ECF Doc. # 42; "Fourth Hershey Decl.," ECF Doc. # 43; "Proposed Findings of Fact,"

---

[2]     Olinda's BVI foreign representative has now filed a new chapter 15 case for Olinda in this Court (Case No. 20-10712 (MG)), asking this Court to recognize the BVI proceeding and to recognize and enforce the scheme of arrangement.  The requested relief will be granted is a separate opinion.

[3]     The Background section includes the Court's findings of fact pursuant to FED. R. BANKR. P. 7052, which incorporates FED. R. CIV. P. 52.

ECF Doc. # 57-1; "Second Picot Decl.," ECF Doc. # 135.)  The Motion is also supported by the

Foreign Representative's Verified Petition for Recognition of the Olinda BVI Proceeding.

("Olinda Petition for Recognition," Case No. 20-10712 (MG), ECF Doc. # 2.)

On May 9, 2019, the Court issued an opinion granting recognition of the Brazilian RJ

Proceeding to all the Constellation, Chapter 15 Debtors (the "Recognized Debtors") except for

Olinda and Arazi.  *In re Serviços de Petróleo Constellation S.A.*, 600 B.R. 237 (Bankr. S.D.N.Y.

2019) (hereinafter "*SPC Opinion*").  The Court granted recognition as a foreign nonmain

proceeding to Constellation Oil Services Holding S.A. ("Parent/Constellation") and granted

recognition as a foreign main proceeding for remaining Chapter 15 Debtors.[4]  *SPC Opinion* at

246.  Recognition was not granted to Olinda or Arazi because, at that time, Olinda and Arazi had

been removed from the Brazilian RJ Proceeding by the Brazilian Court of Appeals in a decision

issued March 26, 2019.  *SPC Opinion* at 253.  On June 4, 2019, the Brazilian Court of Appeals

issued an amended decision determining that Arazi should remain an RJ Debtor in the Brazilian

RJ Proceeding, and only Olinda should be excluded (the "Clarification Decision").  (Motion ¶ 1

(citing Hershey Decl., Ex. B; ECF Doc. # 99-1).)  Olinda has appealed the Clarification

Decision, but Petitioner represents that such appeal could take years to be decided.  (*Id.* (citing

Second Picot Decl. ¶ 69).)

The Court assumes familiarity with the facts in this case and refers to the *SPC Opinion*

recounting the circumstances leading to the Constellation Group's restructuring in Brazil and the

---

[4]        In the *SPC Opinion*, the Court determined that each of the Recognized Debtors had the following COMI:
Serviços de Petróleo Constellation S.A. (**Brazil**); Lone Star Offshore Ltd. (In Provisional Liquidation) (**Brazil**);
Gold Star Equities Ltd. (In Provisional Liquidation) (**Brazil**); Star International Drilling Limited (**Brazil**); Alpha
Star Equities Ltd. (In Provisional Liquidation) (**Brazil**); Snover International Inc. (In Provisional Liquidation)
(**Brazil**); Parent/Constellation (**Luxembourg**); and Constellation Overseas Ltd. (In Provisional Liquidation)
(**Brazil**).  *See SPC Opinion* at 246.

Foreign Representative's initial request for recognition of the Brazilian RJ Proceeding as to Olinda and Arazi. *See generally SPC Opinion* at 246–53.

## A. Olinda

Petitioner represents that the Clarification Decision and delay in the pending appeal in Brazil have caused Olinda's reorganization to change course—Olinda and its joint provisional liquidators have determined to pursue the parallel Olinda BVI Proceeding. (Motion ¶ 2.) Accordingly, Petitioner seeks the dismissal of the Existing Olinda Chapter 15 Case and the termination of the associated provisional relief granted in connection therewith in favor of the Olinda Petition for Recognition of the BVI Proceeding and enforcement of the BVI-law scheme of arrangement governing its restructuring (the "Olinda BVI Scheme"). (*Id.*)

On August 5, 2019, Olinda, its joint provisional liquidators, certain consenting 2024 Noteholders,[5] and certain creditor parties to the Constellation Group's Plan Support Agreement entered into a term sheet (the "Olinda Term Sheet") governing the parallel restructuring of Olinda's guarantee obligations in the BVI through the Olinda BVI Proceeding before the BVI Court. (*Id.* ¶ 5 (citing Hershey Decl., Ex. C).) On December 13, 2019, Olinda, pursuant to the authority of its joint provisional liquidators, resolved to propose the Olinda BVI Scheme to scheme creditors. (*Id.* (citing Hershey Decl., Ex. D).) On February 6, 2020, a meeting of Olinda's scheme creditors was held and the BVI Scheme was approved by 100% of creditors present and voting. (*Id.* (citing Hershey Decl., Ex. E).)

Petitioner represents that the Olinda BVI Scheme has already been unanimously approved by scheme creditors present and voting, as required by BVI law, and sanctioned by the Eastern Caribbean Supreme Court in the High Court of Justice of the Virgin Islands, Commercial

---

[5]    All capitalized terms used but not defined herein have the same meanings as ascribed to them in the *SPC Opinion*.

Division (the "BVI Court"). (*Id.*) Petitioner requests that, should the Court recognize Olinda's

BVI Proceeding as a foreign main or nonmain proceeding pursuant to the Olinda Petition for

Recognition, the Court terminate the existing provisional relief that was granted to Olinda at the

outset of the Existing Olinda Chapter 15 Proceeding. (*Id.* ¶ 7 (citing "Provisional Relief Order,"

ECF Doc. # 29).)

### B. Arazi

On December 5, 2019, the Court granted full force and effect to the RJ Plan only with

respect to the Recognized Debtors and ordered that Petitioner may subsequently request the same

relief for Arazi by filing a motion seeking recognition of Arazi's Brazilian RJ Proceeding. (*Id.* ¶

3 (citing "FFE Order," ECF Doc. # 192 ¶ F).) On December 18, 2019, the Recognized Debtors

closed the transactions contemplated by the RJ Plan (the "Restructuring Transactions"). (*Id.*

(citing ECF Doc. # 194).) The Restructuring Transactions included entry into amended and

restated credit agreements in respect of the Constellation Group's project financing and working

capital facilities, as well as issuance of new secured and unsecured notes pursuant to new

indentures. (*Id.* at n.5.) Petitioner represents that all that remains for the Constellation Group's

reorganization process is to restructure certain guarantees issued by Arazi and Olinda in respect

of the existing notes. (*Id.*) Accordingly, Petitioner seeks recognition of the Brazilian RJ

Proceeding and the enforcement of the RJ Plan in the United States with respect to Arazi.

(Motion at 7.)

### C. Facts Applicable to the COMI Analysis with Respect to Arazi

Arazi functions as a special-purpose holding and financing company for the Constellation

Group. (Verified Petition ¶ 4.) 100% of Arazi's equity is directly owned by

Parent/Constellation. (*Id.* ¶ 37.) Arazi holds a minority equity stake—ranging from 5 to 20

percent—in five (5) joint ventures and associated entities that own floating production, storage,

and offloading vessels (the "JV FPSO Units"). (*Id.* ¶ 18 n.15.) The JV FPSO Units appear to be

operated by five (5) separate, corresponding joint ventures and associated entities—the Verified

Petition represents that, through RJ Debtor Lancaster, Parent/Constellation holds a minority

equity stake in each of the entities that serve as operator for the applicable JV FPSO Unit. (*Id.*)

Specifically, the Verified Petition describes the JV FPSO Unit investment structure as follows:

> Each JV FPSO Unit investment project follows a similar structure under
> which the Company, directly or indirectly, generally owns equity interests
> in (i) the joint venture or associated entity that owns the applicable JV FPSO
> Unit through Arazi, and (ii) the joint venture or associated entity that serves
> as the operator for the applicable JV FPSO Unit through RJ Debtor
> Lancaster.

(*Id.*)

### 1. Location of Arazi's Headquarters

Arazi is incorporated under the laws of Luxembourg, where it conducts activities, is a tax

resident, and has its registered office. (Motion ¶ 17 (citing Verified Petition ¶ 72); *see also*

Proposed Findings of Fact ¶ 91.)

### 2. Location of Arazi's Management

Arazi has no officers. ("2019 Offering Memorandum," ECF Doc. # 42-1 at 118 ("There

are no statutory officers under Luxembourg law . . . .").) As of the Petition Date, Arazi utilized

and benefited from the operational coordination activities of the Constellation Group's Brazilian

Offices, as well as utilizing employee services from Chapter 15 Debtor Serviços de Petróleo

Constellation S.A. ("Petróleo Constellation"). (Motion ¶ 18 (citing Verified Petition ¶ 72).)

Arazi's indirect assets—the JV FPSO Units—were operationally managed by the Constellation

Group's management teams in Brazil. (*Id.* (citing Verified Petition ¶ 72).)

7

Arazi has two directors—Mr. Paul de Quant and Mr. Sebastien Francois—both of whom reside in Luxembourg.  (*Id.* (citing Proposed Findings of Fact ¶ 91).)  Messrs. de Quant and Francois also serve on the Board of Directors for Parent/Constellation, an entity also incorporated under Luxembourg law.  (ECF Doc. # 46 ¶¶ 1, 3); *see SPC Opinion* at 258. Companies incorporated under Luxembourg law are required to hold their board of directors' meetings and shareholders meetings in Luxembourg.  *See SPC Opinion* at 258.  Petitioner does not provide any detail regarding the duties required to be performed by Arazi's board of directors, however, the Original Exchange Offer Memorandum states, "[i]n accordance with Luxembourg law, [Parent/Constellation's] Board of Directors is the sole responsible body for managing [Parent/Constellation and its consolidated subsidiaries'] affairs and ensuring that [Parent/Constellation and its consolidated subsidiaries'] operations are organized in a satisfactory manner."  *Id.* (citing "Original Exchange Offer Memorandum," ECF Doc. # 43-1 at 131). Because Arazi is also subject to the laws of Luxembourg, the Court finds that Arazi's board of directors must have similar responsibilities with respect to the JV FPSO Units in which Arazi invests.  Accordingly, the Court finds that Arazi's management is located in Luxembourg, where the board of directors conducts business.

### 3.  *Location of Arazi's Assets*

As an investment vehicle, Arazi does not have any assets other than its equity interests in joint ventures and associated entities that own and operate the JV FPSO Units.  (Motion ¶ 16 (citing Verified Petition ¶ 72).)  The 2019 Offering Memorandum explains that "Arazi holds [Parent/Constellation's] equity interests in FPSOs."  (2019 Offering Memorandum at 22.) Otherwise, Arazi has no independent operations or assets.  Arazi's key indirect assets are the JV

FPSO Units, which were all located in Brazilian waters as of the Petition Date.  (Motion ¶ 16.)

Accordingly, The Court finds that Arazi's assets are primarily located in Brazil.

### 4.  *Location of Arazi's Creditors*

Arazi is a limited guarantor of the 2024 Notes.  (*Id.* ¶ 20 (citing Proposed Findings of

Fact ¶ 95).)  The indenture trustees of the 2024 Notes are located in New York and there is no

evidence in the record regarding the location of the beneficial holders of the 2019 Notes and

2024 Notes.  (*Id.*)

### 5.  *Reasonable Expectations of Third Parties Regarding the Location of Insolvency Proceedings Involving Arazi*

Arazi is a limited guarantor of the Existing 2024 Notes and Arazi's key creditor

constituency is the holders of those notes.  (*Id.* ¶ 22 (citing Proposed Findings of Fact ¶¶ 95–

96).)  The Supplemental Exchange Offer Memorandum cautions Arazi's investors that Arazi is

incorporated under the laws of Luxembourg, "and as such, any insolvency proceedings

applicable to them are in principle governed by Luxembourg law."  (*Id.* ¶ 22 (citing

"Supplemental Exchange Offer Memorandum," ECF Doc. # 42-4 at 21).)  Further, the

Supplemental Exchange Offer Memorandum explains that the section titled "Certain

Luxembourg Insolvency Law Considerations" in the 2019 Offering Memorandum should be read

as applicable to "both the Company and Arazi."  (Supplemental Exchange Offer Memorandum at

22.)

However, the Supplemental Exchange Offer Memorandum also explains to investors that

restructuring proceedings could be commenced in Brazil due to the Group's significant ties there.

(*Id.*)  Disclosures relating to the Existing 2024 Notes describe that the JV FPSO Units are

chartered in Brazilian waters, to Brazilian customers, and provides that the Units are subject to

the oversight of the Brazilian regulatory authorities.  (*Id.* at 23.)  Petitioner argues that the

Brazilian-centric nature of the JV FSOP Units and the fact that none of Arazi's creditors have

objected to recognition supports a finding that third parties could reasonably expect an Arazi

insolvency proceeding to be located in Brazil instead of Luxembourg.

### 6.  *Jurisdiction Whose Law Would Apply to Most Disputes*

Arazi is subject to Luxembourg laws, regulations, and jurisdiction with respect to

potential corporate and tax disputes.  (*Id.* ¶ 21 (citing Verified Petition ¶ 72; Proposed Findings

of Fact ¶ 159).)  Arazi's indirect assets—the JV FPSO Units—are located in Brazil and are

subject to Brazilian regulatory regimes (including contract law, maritime law, employee law,

environmental law, and Brazilian regulatory approvals for the operation of drilling rigs).  (*Id.*

(citing Verified Petition ¶ 69).)

## II.    DISCUSSION

### A.  Cause Exists to Grant the Withdrawal and Dismissal of the Existing Olinda Chapter 15 Case

This Court has previously permitted withdrawal of a verified petition where a U.K.

scheme of arrangement had not proceeded, and the debtors instead pursued alternative

restructuring proceedings.  *In re Thomas Cook Grp. plc*, No. 19-12984 (MG) (Bankr. S.D.N.Y.

Oct. 23, 2019) (ECF Doc. # 18).  In the *Thomas Cook* chapter 15 proceeding, the Court permitted

withdrawal of the verified petition and ordered the dismissal of the chapter 15 case where

debtors' scheme of arrangement proceedings in the U.K. had not proceeded and the debtors

instead applied to a separate U.K. court for a winding up order which was granted prior to the

motion for withdrawal and dismissal.  (*Thomas Cook*, ECF Doc. # 16-1 at 2.)  Chapter 15

debtors have also been permitted to withdraw their verified chapter 15 petitions where the

underlying foreign proceeding had been withdrawn.  *See In re China Fishery Grp. Ltd.*

(*Cayman*), No. 16-11895 (JLG), 2017 Bankr. LEXIS 2017, at *8 n.7 (Bankr. S.D.N.Y. July 19, 2017).

Here, cause exists to grant the withdrawal of Olinda's existing chapter 15 Verified Petition (the "Existing Chapter 15 Verified Petition"), order the dismissal of the Existing Olinda Chapter 15 Case, and terminate provisional relief granted to Olinda. Olinda has proceeded to restructure its guarantee obligations through the Olinda BVI Proceeding and the Olinda BVI Scheme because it was removed from the Brazilian RJ Proceeding, for which recognition was originally sought. (Motion ¶ 4.) The BVI-Court appointed foreign representative for the Olinda BVI Proceeding seeks recognition of that proceeding and enforcement of that scheme. (*Id.*) The posture and circumstance of the Olinda proceeding in the Brazilian RJ Court and the Existing Chapter 15 Verified Petition is similar to that in *Thomas Cook*. Specifically, Petitioner wishes to dismiss this case and terminate the associated provisional relief that was granted in favor of a new case seeking such relief in connection with the Olinda BVI Proceeding—*i.e.*, pursuant to the Olinda BVI Verified Petition. Accordingly, the Court approves Petitioner's request to withdraw the Existing Chapter 15 Verified Petition and grants dismissal of the Existing Olinda Chapter 15 Case.

Further, it appears that the continued operation of the stay granted pursuant to the Provisional Relief Order in connection with the Existing Chapter 15 Verified Petition will no longer be necessary to protect Olinda from adverse creditor action within the United States because, pursuant to a separate memorandum and opinion entered contemporaneously herewith, the Court grants the Olinda Petition for Recognition of the BVI Proceeding. Accordingly, the Court grants Petitioner's request to terminate the Provisional Relief Order.

### B.  Arazi Satisfies Section 109(a) and Venue is Proper in this District

Foreign debtors seeking relief under chapter 15 must satisfy the debtor eligibility

requirements set forth in section 109(a) of the Bankruptcy Code.  *See In re Ocean Rig UDW Inc.*,

570 B.R. at 698 (citing *Drawbridge Special Opportunities Fund LP v. Barnet* (*In re Barnet*), 737

F.3d 238, 247–51 (2d Cir. 2013)).  Section 109(a) provides that "only a person that resides or has

a domicile, a place of business or property in the United States, or a municipality, may be a

debtor" under the Bankruptcy Code.  11 U.S.C. § 109(a).

In the *SPC Opinion*, this Court found that each of the Chapter 15 Debtors, including

Arazi, had property in the United States.  *See SPC Opinion* at 269 (finding that "[a]ll of the

principal documents setting forth Parent/Constellation's prepetition debt obligations are

governed by New York law and generally contemplate New York as a venue for disputes.  [And]

each of the Chapter 15 Debtors owns $1,000 cash in U.S. bank accounts principally located in

Manhattan, New York.").  The Court held that, together, such property constitutes the principal

U.S. assets of each of the Chapter 15 Debtors, including Arazi, in satisfaction of section 109(a).

*See id.*  Additionally, because of the location of these accounts, the Court held that venue was

proper pursuant to section 1410(1) of title 28 of the United States Code.  *See id.*  These facts

have not changed.  Accordingly, the Court finds that venue is proper in this district.

### C.  Arazi Satisfies the Recognition Requirements Contained in Sections 1517(a)(2) & 1517(a)(3)

Section 1517(a) provides the remaining requirements for the recognition of a foreign

proceeding under chapter 15.  *In re Ocean Rig UDW Inc.*, 570 B.R. at 698.  Subject to the public

policy exception contained in section 1506, a foreign proceeding must be recognized if the

following requirements are met: (1) such foreign proceeding for which recognition is sought is a

foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502; (2)

the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515.  11 U.S.C. § 1517(a); *see also In re Ocean Rig UDW Inc.*, 570 B.R. at 698–99.

Therefore, recognition of the foreign proceeding is statutorily mandated if the three requirements of section 1517(a) are met and no exception applies.  *See In re Millard*, 501 B.R. 644, 651 (Bankr. S.D.N.Y. 2013).  The first of section 1517(a)'s three factors requires the Court to determine that a foreign proceeding is either a main or nonmain proceeding before it can be recognized.  11 U.S.C. § 1517(a).  That determination is the more complex issue which will be further discussed below.  The other two requirements of section 1517 are more straightforward on these facts, and the Court previously determined that both are met with respect to the Chapter 15 Debtors, including Arazi.  *SPC Opinion* at 269–70.  The underlying facts have not changed.  Accordingly, the Court finds that the Petitioner satisfies the requirements of section 1517(a)(2) and (a)(3) because the Petitioner is a person or body and the Verified Petition meets the requirements of section 1515.

### D.  Recognition of a Foreign Proceeding as Main or Nonmain Under Section 1517(a)(1)

In order to grant recognition, the Court must find that the Brazilian RJ Proceeding constitutes either a main or nonmain proceeding with respect to Arazi.  *See, e.g.*, *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 126–27 (Bankr. S.D.N.Y. 2007) [hereinafter *Bear Stearns I*] ("[T]he recognition must be coded as either main or nonmain."), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) (hereinafter *Bear Stearns II*).  When a debtor seeks recognition of a foreign proceeding, the Court may (i) recognize the proceeding as a *foreign main proceeding*, (ii) recognize the proceeding as a *foreign nonmain proceeding*, or (iii) refuse recognition.  *See id.* at 126–33 (refusing to recognize foreign proceedings as main or

nonmain proceedings since the debtors did not meet the nonmain proceeding requirement of having an "establishment" in the location of the proceeding).

Courts determine if a proceeding is main or nonmain using section 1502's definitions of each term. Section 1502 defines a "foreign main proceeding" as a "foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign nonmain proceeding is defined as a "foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an *establishment*." *Id.* § 1502(5) (emphasis added). The term "establishment" is defined in Chapter 15 as "any place of operations where the debtor carries out a nontransitory economic activity." *Id.* § 1502(2).

If a proceeding does not qualify as a main or nonmain proceeding, it cannot be recognized under chapter 15. The *Bear Stearns* court explained:

> [T]he process of recognition of a foreign proceeding is a simple single step process incorporating the definitions in sections 1502 and 101(23) and (24) to determine recognition as either a main or nonmain proceeding or nonrecognition. *See* Jay Lawrence Westbrook, *Locating the Eye of the Financial Storm*, 32 BROOK. J. INT'L L. 3, 6 (2007 publication pending) hereinafter ("Westbrook Article") ("The Model Law grants great discretion as to specific relief, but imposes a fairly rigid procedural structure for recognition of foreign proceedings.")

*Bear Stearns I*, 374 B.R. at 126; *see Iida v. Kitahara* (*In re Iida*), 377 B.R. 243, 253–57 (B.A.P. 9th Cir. 2007); *see also Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.*, No. 09 Civ. 9021 (PGG), 2010 WL 1779282, at *5 (S.D.N.Y. Apr. 29, 2010) (denying stay absent compliance with Chapter 15); *Halo Creative & Design Ltd. v. Comptoir Des Indes Inc.*, No. 14 C 8196, 2018 WL 4742066, at *2 (N.D. Ill. Oct. 2, 2018) ("[F]oreign representatives must be recognized under Chapter 15 to seek a stay from a federal court.").

The court in *In re Oi Brasil Holdings* further explained that the recognition decision is one of the few pieces of the chapter 15 process in which courts are *not* to be guided by the

14

general principles of comity, since the text of the statute "provides the standard for a court's

determination" and therefore "comity does not enter the equation." *In re Oi Brasil Holdings*

*Cooperatief U.A.*, 578 B.R. 169, 213 (Bankr. S.D.N.Y. 2017), *reconsideration denied*, 582 B.R.

358 (Bankr. S.D.N.Y. 2018).  The *Oi* court explained:

> In the case of recognition under Chapter 15, "[b]oth the plain
> language and legislative history of Chapter 15 . . . requires [a bankruptcy
> court to make] a factual determination with respect to recognition before
> principles of comity come into play." *In re Bear Stearns*, 389 B.R. at 334.
> So while comity governs recognition of a foreign judgment (*see Rapture
> Shipping*, 350 F.Supp.2d at 373), it does not govern the initial recognition
> of a foreign proceeding under Chapter 15.  Recognition of a proceeding
> requires the application of "objective criteria," and it is only post-
> recognition relief which "turns on subjective factors that embody principles
> of comity."  *In re Atlas Shipping*, 404 B.R. at 738 (*quoting In re Bear
> Stearns*, 389 B.R. at 333 (*citing* 11 U.S.C. §§ 1507, 1517, 1521, 1525;
> Model Law Art. 7, 17, 21, 25)).

*Id.* at 214 (alteration in original).

Once the decision to grant recognition is made, however, principles of comity and the

provisions of chapter 15 can provide substantially similar relief to a debtor—whether a

proceeding is recognized as main or nonmain.  In the *SPC Opinion*, this Court emphasized that

there may be no statutory or practical impact of distinguishing recognition as a foreign main

versus nonmain proceeding.  Indeed, a foreign nonmain proceeding can be granted nearly

identical relief as the relief provided to a main proceeding.  The *SPhinX* court explained:

> Under either approach, the Court would be able to grant the [foreign
> representatives] the same significant relief upon a proper showing, given
> the Court's view that Congress separated the concept of "recognition" under
> Bankruptcy Code section 1517(a) from the concept of "recognition as a
> foreign nonmain proceeding" under section 1517(b)(2).  (Indeed, as noted
> above, except for the applicability of the automatic stay, the potential relief
> available to the [foreign representatives] under chapter 15 in almost all
> respects does not depend on whether the Cayman Islands proceedings are
> recognized as "main" or "nonmain.")

*In re SPhinX, Ltd.*, 351 B.R. 103, 122 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007).

### E.  Recognition as a Foreign Main Proceeding

While the statute provides that a foreign main proceeding is one where the debtor has its COMI, the statute does not further define the term COMI.  *See generally* 11 U.S.C. §§ 1501–1532.  There is a rebuttable presumption that COMI is where the debtor has its "registered office."  *Id.* § 1516(c) ("In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests.").  However, the COMI presumption is rebuttable where other factors suggest that the true COMI of a debtor lies elsewhere.  *See, e.g.*, *Bear Stearns II*, 389 B.R. at 335 ("[S]ection 1516(c) creates no more than a rebuttable evidentiary presumption, which may be rebutted notwithstanding a lack of party opposition.").

### 1.  The SPhinX Factors

Courts in this District have developed a widely adopted list of factors for determining COMI.  *Morning Mist Holdings Ltd. v. Krys* (*In re Fairfield Sentry Ltd.*), 714 F.3d 127, 137 (2d Cir. 2013) (referring to and citing the factors from *In re SPhinX, Ltd.*, 351 B.R. at 117).  These factors, enumerated below (hereinafter, "*SPhinX* Factors"), are not to be applied mechanically and are nonexclusive.  *Id.*  In fact, a consideration of the factors is neither required nor dispositive.  *Id.*  The factors are, however, helpful.  The *SPhinX* court explained:

> Various factors, singly or combined, could be relevant to such a [COMI] determination: [1] the location of the debtor's headquarters; [2] the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); [3] the location of the debtor's primary assets; [4] the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; [5] and/or the jurisdiction whose law would apply to most disputes.

*In re SPhinX, Ltd.*, 351 B.R. at 117.

### 2. Third Party Expectations

Beyond the *SPhinX* Factors, the Second Circuit and other courts have examined whether there exists any objective evidence that could provide interested parties with notice that a debtor's COMI was in a particular jurisdiction other than the place of its registered office. *See In re Fairfield Sentry*, 714 F.3d at 130 ("[T]he relevant principle . . . is that the COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties . . . ."). As the Second Circuit explained, by examining factors "in the public domain," courts are readily able to determine whether a debtor's COMI is in fact "regular and ascertainable [and] not easily subject to tactical removal." *See id.* at 136–37; *see also Bear Stearns I*, 374 B.R. at 129–30 (looking at whether the proposed COMI was ascertainable by third parties as part of its COMI analysis). The Second Circuit's focus on readily ascertainable evidence of COMI derives from the regulation adopting the European Union Convention on Insolvency Proceedings, where the COMI concept (which corresponds to that of the Model Law) is elaborated upon as "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." *In re Fairfield Sentry*, 714 F.3d at 136 (citing the Council Reg. (EC) No. 1346/2000 of May 29, 2000 on Insolvency Proceedings, Preamble ¶ 13).

### 3. Expectations of Creditors

Courts in the Second Circuit also look to the expectations of creditors with regard to the location of a debtor's COMI. For example, "[c]reditor expectations can be evaluated through examination of the public documents and information available to guide creditor understanding of the nature and risks of their investments." *In re Oi Brasil Holdings Cooperatief U.A.*, 578 B.R. at 228. In practice, the evaluation of creditor expectations has focused on reviewing

disclosures in offering memoranda and indentures.  *See id.* at 228–32 (reviewing offering memorandum to establish noteholder expectations as part of a COMI analysis); *In re OAS S.A.*, 533 B.R. 83, 101–03 (Bankr. S.D.N.Y. 2015) (same); *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 474 B.R. 88, 93–94 (S.D.N.Y. 2012) (same); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 418 (Bankr. S.D.N.Y. 2014) (considering terms of indenture to establish creditor expectations regarding likely location of a restructuring as part of a COMI analysis).

The court in *In re Chiang*, 437 B.R. 397 (Bankr. C.D. Cal. 2010), explained that "the location of the COMI is an objective determination based on the viewpoint of third parties (usually creditors)."  *Id.* at 403.  The *OAS* court found that notice to creditors of "Risk Factors" contained within offering memoranda of a debtor's notes were particularly important.  *In re OAS S.A.*, 533 B.R. at 102–03.

The *OAS* court concluded that the creditors would have understood that they were investing in a Brazilian based business, even though (i) the offering memoranda provided that their rights were governed by New York law and they consented to jurisdiction and service of process in New York and (ii) the creditors expected to receive payment from cash generated by the operations of the group and in the event of default were only warned that they "might ultimately have to enforce their rights in a Brazilian bankruptcy proceeding" as opposed to an Austrian proceeding, where the holding company was incorporated.  *Id.* at 103.  Despite the foreign debtor's Austrian incorporation, the *OAS* Court found that "OAS Investments' place of incorporation, or for that matter its very existence, was immaterial to their decision to purchase their notes."  *Id.*  Ultimately, the court found that the creditors' expectation of COMI should weigh in favor of a Brazilian COMI where "OAS Investments had no separate, ascertainable presence in Austria; it was part of, and inseparable from, the OAS Group located in Brazil.

18

Finally, the 2019 Noteholders had no legitimate expectation that the Austrian courts would play any role in the determination or payment of their claims." *Id*.

### 4. PPB or Nerve Center Analysis

Some courts have also employed the concept of "principal place of business" to guide their COMI analysis and, accordingly, have applied the Supreme Court's definition of that concept in the context of subject matter jurisdiction, which looks at a corporation's "nerve center," *i.e.*, "where a corporation's *officers* direct, control, and coordinate the corporation's activities." *See In re Fairfield Sentry Ltd.*, 714 F. 3d at 138 n.10 (emphasis added) (citing *Hertz Corp. v. Friend*, 130 S.Ct. 1181, 1192 (2010)). The Second Circuit clarified in *Fairfield Sentry* that given Congress's choice to use "COMI" instead of "principal place of business" in chapter 15, the "nerve center" concept does not control, "[b]ut to the extent that the concepts are similar, a court may certainly consider a debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." *Id.*

The "nerve center" analysis, like most other factors in the COMI analysis, is not a straightforward standard when applied to most international conglomerates. However, it can provide a helpful reminder that courts should not perfunctorily rely upon the place of incorporation or location of board meetings to establish the corporation's ultimate COMI. *See, e.g.*, *In re OAS S.A.*, 533 B.R. at 102 (finding Brazil as the nerve center where "[t]here is no evidence that its Board of Directors ever convened a meeting except to pass the resolution appointing Tavares as its foreign representative, and that resolution was executed by its Brazilian directors in Brazil.").

### 5. *Additional Considerations*

There are circumstances that further complicate the COMI analysis with respect to Arazi. For example, in *OAS*, the court noted that "the COMI analysis when applied to a special purpose financing vehicle proves less straightforward than the typical case." *Id.* at 101.

While the above complications are all present in the analysis before the Court, it is nonetheless true that every debtor has one and only one COMI. *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 79 (Bankr. S.D.N.Y. 2011) ("[E]very entity has a center of main interests."); *In re Chiang*, 437 B.R. at 403 ("[A] debtor may not have more than one COMI. . . .  In addition, a debtor must have a COMI and it must be in a specific country.").

### F. **Recognition as a Foreign Nonmain Proceeding**

An alternative form of recognition is recognition as a foreign nonmain proceeding.  To be recognized as a nonmain proceeding, the foreign debtor must establish a degree of stable connections with the jurisdiction to constitute a nontransitory "establishment."  11 U.S.C. § 1502(2).  As several commentators have explained:

> Before *Bear Stearns*, it seems fair to say that many practitioners believed—based on section 1515—that by making these two showings, the statutory requirements for commencing a valid and proper Chapter 15 proceeding had been met.  *Bear Stearns* revealed, however, that when a foreign debtor commences a proceeding in a jurisdiction where it has no real "presence"—i.e., no nontransitory business activity—the foreign proceeding will not be recognized under Chapter 15, either as a "main" or "nonmain" proceeding.  The "establishment" requirement for "nonmain" status requires, as a prerequisite for any relief under Chapter 15, a base level of connection between the foreign debtor and the foreign jurisdiction that prevents a debtor from commencing a case in a jurisdiction where it has nothing more than a mail-drop presence.

William H. Schrag, William C. Heuer, and Robert E. Cortes, *Cross-Border Insolvencies and Chapter 15: Recent U.S. Case Law Determining Whether a Foreign Proceeding Is "Main" or "Nonmain" or Neither*, 17 J. BANKR. L. & PRAC. 5 Art. 4 (Aug. 2008).

Thus, on one end of the spectrum, a debtor may have activities so centered in the location of the foreign proceeding that the location is the debtor's COMI, and on the other end of the spectrum, the debtor may be so disconnected from the location of the proceeding that courts should refuse to recognize it at all.  Somewhere between these two extremes are companies that have sufficient non-transitory business connections with the jurisdiction of the proceeding to determine that the proceeding is nonmain.  In the *SPC Opinion*, for example, while the Court found that Parent/Constellation's COMI was in Luxembourg, the Court also found that all of Parent/Constellation's subsidiaries has substantial and ongoing business connections to Brazil. *SPC Opinion* at 281–82.  The Court held that the Brazilian-based activities of Parent/Constellation's subsidiaries were non-transitory ties sufficient to recognize the Brazilian RJ Proceeding as a foreign nonmain proceeding with respect to Parent/Constellation.  *Id.* at 282.

### G. Arazi's COMI is Luxembourg

Based upon the foregoing findings of fact and the most relevant COMI factors, discussed below, the Court finds that Arazi's COMI is based in Luxembourg.  Accordingly, the Court finds that the Brazilian RJ Proceeding is a foreign nonmain proceeding with respect to Arazi.

#### 1.  The Location of Arazi's Headquarters is Luxembourg

The location of Arazi's headquarters is Luxembourg, where it is incorporated and conducts activities, is a tax resident, and has its registered office.  (Motion ¶ 17 (citing Verified Petition ¶ 72).)  Accordingly, Arazi's COMI is presumed to be Luxembourg under section 1516(c).  11 U.S.C. § 1516(c) ("In the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests.").  However, the COMI presumption is rebuttable where other factors suggest that the true COMI of a debtor lies

elsewhere. *See, e.g.*, *Bear Stearns II*, 389 B.R. at 335. Those factors are addressed below, and, as discussed, weigh in favor of a finding that Arazi's COMI is Luxembourg.

> 2. *Location of those who Actually Manage Arazi Weighs in Favor of a COMI in Luxembourg*

Arazi's board of directors meets in Luxembourg. Arazi's sole function is an investment vehicle through which the Constellation Group owns a minority stake in the JV FPSO Units. (Verified Petition ¶ 4.) Petitioner submits that Arazi utilized and benefited from the operational coordination activities of the Group's Brazilian Offices, as well as utilizing employee services from Debtor Petróleo Constellation. (Motion ¶ 18 (citing Verified Petition ¶ 72).) In the *SPC Opinion*, the Court found that the Brazilian Offices were of particular importance to the Chapter 15 Debtors that owned drilling rigs (the "Rig-Owning Entities") because all operation and management of their rigs were run from the Brazilian Offices. *SPC Opinion* at 285, 291–92. Petitioner argues that the same finding is warranted with respect to Arazi because the JV FPSO Units were operationally managed by the Group's management teams in Brazil as of the Petition Date. (Motion ¶ 18.) However, unlike the Rig-Owning Entities, Arazi does not own any operational assets; Arazi's minority equity stake in the JV FPSO Units represents an indirect, partial ownership of assets operational in Brazil. As a special purpose investment vehicle, it is unclear how Arazi could utilize operational services on the ground in Brazil.

Because Arazi exists for the task of holding and managing the Group's investments in the JV FPSO Units, it makes sense that the location from which the board of directors conducts its activities should weigh more heavily than the location of the primary tangible assets in which Arazi invests—Brazilian waters. *See SPC Opinion* at 280. That conclusion would not change even if the Court were inclined to consider the location of Arazi's parent company, Parent/Constellation, whose COMI the Court has held to be Luxembourg. *SPC Opinion* at 285;

see *In re OAS*, 533 B.R. at 101–02 (noting that the COMI of the special-purpose-vehicle-debtor depended upon the location of the nerve center of the corporate group the SPV served, and holding that the SPV debtor's COMI was with its parent).  Accordingly, the Court finds that the location of those who manage Arazi weighs in favor of a COMI in Luxembourg.

### 3.  *The Location of Arazi's Primary Assets Weighs in Favor of a COMI in Brazil*

Arazi owns a minority stake in the JV FPSO Units.  Its direct ownership of assets is therefore the equity in these JV FPSO Units that it holds in Luxembourg.  Given its role as an investment vehicle, Arazi has no employees, officers, or customers of its own, instead its limited function is to hold equity investments for Parent/Constellation.  However, as a holding company, the location of the JV FPSO Units in which Arazi invests and the location of the Unit's principal assets is relevant to the COMI analysis.  *See SPC Opinion* at 282 (citing *In re Inversora Eléctrica de Buenos Aires S.A.*, 560 B.R. 630, 656 (Bankr. S.D.N.Y. 2016)).  Through Arazi's holdings of interests in the JV FPSO Units, Arazi has indirect, partial ownership of five (5) FPSOs that were principally located in Brazilian waters as of the Petition Date.  Accordingly, the Court finds that this factor weighs in favor of COMI in Brazil.

### 4.  *Location of the Majority of Arazi's Creditors is Neutral*

Arazi is a limited guarantor of the 2024 Notes.  (Motion ¶ 20 (citing Proposed Findings of Fact ¶ 95).)  The indenture trustees of the 2024 Notes are located in New York and there is no evidence in the record regarding the location of the beneficial holders of the 2019 Notes and 2024 Notes.  (*Id.*)  Accordingly, the Court finds that the location of most of Arazi's creditors is neutral for purposes of the COMI analysis.

   5.   *The Jurisdiction Whose Law Would Apply to Most Disputes Weighs in Favor of a COMI in Luxembourg*

Arazi is subject to Luxembourg laws, regulations, and jurisdiction with respect to potential corporate and tax disputes.  (*Id.* ¶ 21 (citing Verified Petition ¶ 72; Proposed Findings of Fact ¶ 159).)  Arazi's indirect assets—the JV FPSO Units—are located in Brazil and are subject to Brazilian regulatory regimes (including contract law, maritime law, employee law, environmental law, and Brazilian regulatory approvals for the operation of drilling rigs).  (*Id.* (citing Verified Petition ¶ 69).)  While that may be true in a general sense, as previously discussed, Arazi does not in fact operate any of the JV FPSO Units in which it invests, so Arazi is not likely to be directly implicated by legal disputes arising from operation of the JV FPSO Units.  Accordingly, Luxembourg law should be considered the most relevant law governing Arazi's disputes for purposes of the COMI determination.

   6.   *The Reasonable Expectations of Interested Third Parties and Creditors is Luxembourg*

Arazi is a limited guarantor of the Existing 2024 Notes and Arazi's key creditor constituency is the holders of those notes.  (*Id.* ¶ 22 (citing Proposed Findings of Fact ¶¶ 95–96).)  The Supplemental Exchange Offer Memorandum cautions Arazi's investors that Arazi is incorporated under the laws of Luxembourg, "and as such, any insolvency proceedings applicable to them are in principle governed by Luxembourg law."  (*Id.* (citing Supplemental Exchange Offer Memorandum at 21).)  Further, the Supplemental Exchange Offer explains that the section titled "Certain Luxembourg Insolvency Law Considerations" in the 2019 Offering Memorandum should be read as applicable to "both the Company and Arazi."  (Supplemental Exchange Offer Memorandum at 22.)

However, the Supplemental Exchange Offer Memorandum also explains to investors that restructuring proceedings could be commenced in Brazil due to the Group's significant ties there.

(*Id.*)  The Petitioner argues that the reasonable expectations of interested third parties weighs in favor of a COMI in Brazil because, *inter alia*, disclosures relating to the Existing 2024 Notes describe that the JV FPSO Units are chartered in Brazilian waters, to Brazilian customers, and provide that the JV FPSO Units are subject to the oversight of the Brazilian regulatory authorities.  (Motion ¶ 23.)  While Petitioner's characterization of the JV FPSO Units as described in the referenced disclosures is accurate, the same document expressly describes Arazi as owning the Group's interest in entities that own and operate the JV FPSO Units—thus, making clear that Arazi's interest in the JV FPSO Units is an indirect interest.  (*See, e.g.*, ECF Doc. # 43-1 at 26.)

Because the 2019 Notes Offering Memorandum and Supplemental Exchange Offer Memorandum both suggest that insolvency proceedings applicable to Arazi, in principle, are governed by Luxembourg law, and Arazi merely holds indirect investments in entities that own the FSOPs located in Brazil, the Court finds that the objective indicia of Arazi's creditors' expectations of an insolvency proceeding's location weigh in favor of a COMI in Luxembourg.

### 7.    *The Nerve Center Analysis Weighs in Favor of Luxembourg*

Arazi is a special-purpose holding and financing company for the Constellation Group[6] whose activities are directed, controlled and coordinated in Luxembourg.  (Motion ¶ 17 (citing Verified Petition ¶ 72).)  In *OAS*, the SPV debtor's parent was the debtor's sole shareholder and had the power to "determine the outcome of any action requiring shareholder approval, including transaction with related parties, acquisitions and dispositions of assets and the timing and payment of any future dividends."  *In re OAS S.A.*, 533 B.R. at 101–02.  In noting that the COMI of the SPV depended upon the location of the nerve center of the corporate group that the SPV

---

[6]        100% of Arazi's equity is directly owned by Constellation.  (Verified Petition ¶ 37.)

served, the *OAS* court held that the SPV debtor's COMI was with its parent. *Id.* Here, Arazi is

an SPV that is wholly-owned and controlled by its parent, Parent/Constellation, whose COMI

this Court found to be Luxembourg. *SPC Opinion* at 280–81. Accordingly, the Court finds that

the nerve-center test weighs in favor of a COMI in Luxembourg, as in *OAS*, since the Parent of

this SPV is in Luxembourg.

8. *Arazi has Sufficient Ties to Brazil for Foreign Nonmain Recognition*

Although Arazi's COMI is in Luxembourg, all of its indirect assets—the JV FPSO

Units—are located and operate in Brazil. These non-transitory ties to Brazil are sufficient to

recognize the Brazilian RJ Proceeding as a foreign nonmain proceeding with respect to Arazi.

*See SPC Opinion* at 281–82. Accordingly, the Court grants recognition of the Brazilian RJ

Proceeding as a foreign nonmain proceeding with respect to Arazi.

## H. The Court Grants Full Force and Effect and Comity to the RJ Plan with Respect to Arazi.

On December 5, 2019, the Court entered an order granting full force and effect to the RJ

Plan and related relief with respect to the Recognized Debtors within the territorial jurisdiction of

the United States. (FFE Order ("The relief granted hereby: (i) is necessary and appropriate in the

interests of the public and international comity; (ii) is consistent with the public policy of the

United States; (iii) is available and warranted pursuant to sections 105(a), 1145, 1507(a),

1521(a), and 1525(a) of the Bankruptcy Code; and (iv) will not cause the Applicable Chapter 15

Debtors' creditors or other parties in interest any hardship that is not outweighed by the benefits

of granting the relief herein.").) Arazi is requesting the exact same relief as was granted to the

Reorganized Debtors in the FFE Order. (Motion ¶ 29.)

The relief requested by Arazi is not limited by the fact that Arazi's Brazilian RJ

Proceeding is recognized as a foreign nonmain proceeding. *See SPC Opinion* at 272 ("a foreign

nonmain proceeding can be granted nearly identical relief as the relief provided to a main proceeding."); (FFE Order (enforcing the RJ Plan as to nonmain proceeding of Parent/Constellation).)

Petitioner states that granting the requested relief with respect to Arazi (i) is necessary to give effect to the restructuring of the Constellation Group as a whole, as implemented in accordance with the RJ Plan; (ii) would permit Arazi to complete the cancelation of the Arazi Limited Guarantee under the Existing 2024 Notes; and (iii) is necessary to avoid creditor actions against Arazi and those who have facilitated the restructuring of Arazi.  (Motion ¶ 31.) Petitioner argues that the requested relief would not cause undue hardship to any of Arazi's creditors; rather, it would ensure that the anticipated returns to creditors under the RJ Plan are not jeopardized.  (*Id.* ¶ 32.)  Failure to restructure the Arazi Limited Guarantee could risk derailment of the Constellation Group's already substantially complete restructuring.  (*Id.* ¶ 29.) Unlike Olinda, Arazi is not restructuring its guarantee or granting a new guarantee to the restructured debt of the Constellation Group.  (*Id.*)  Rather, the proceeds of the sale of Arazi's assets were already used to partially pay down the bondholders and the remainder was retained to pay for capital and operation expenditures related to the drilling rigs which comprise the bondholders' collateral, as provided under the RJ Plan.  (*Id.* (citing ECF Doc. # 194).)

Because (i) Arazi is requesting the exact same relief that was granted to the Reorganized Debtors by this Court in the FFE Order, (ii) such relief is necessary to avoid creditor actions against Arazi and to the enforcement of the Arazi Limited Guarantee, and (iii) the Brazilian RJ Court has confirmed the RJ Plan with respect to Arazi in connection with the broader restructuring of the Constellation Group, the Court grants full force and effect to the RJ Plan with respect to Arazi and enable the Constellation Group's restructuring process to be concluded.

### III.   <u>CONCLUSION</u>

For the reasons explained above, the Court (i) **APPROVES** the withdrawal of the

Verified Petition with respect to Olinda; (ii) **GRANTS** the dismissal of the Existing Olinda

Chapter 15 Case; (iii) **RECOGNIZES** the Brazilian RJ Proceeding as a foreign nonmain

proceeding with respect to Arazi; and (iv) **GRANTS** full force and effect and comity to the RJ

Plan with respect to Arazi.

**IT IS SO ORDERED.**

Dated:    April 3, 2020
          New York, New York

*Martin Glenn*
_____
MARTIN GLENN
United States Bankruptcy Judge